



ACCREDITED
Health Utilization
Management

# PEER REVIEWER FINAL REPORT

AMR Peer Review Network
Peer Review Recommendation

**Patient Name:**
**Case #:**            V25581687
**Review Type:**       Quality of Care
**Review Level:**
**Review Timing:**
**State:**             AR
**Date Referred:**     5/27/2016
**Date Completed:**    6/23/2016

**Requesting Provider Name:**    Garry Stewart  Family Medicine

**PATIENT CLINICAL INFORMATION:**
**Age:** 53    **Gender:** Female
**Date of Birth:**  8/17/1962
    This is a 53 year old female who was admitted on 4/21/2016 and discharged on 4/21/2016.  Past medical history for this patient included a history of a cerebrovascular accident (CVA), mental retardation, seizures, history of hypertension and obstructive sleep apnea.  The patient was admitted for lethargy and fever. Upon admission, her white blood cell (WBC) count was 24, lactic acid was 5 and her creatinine was 1.2. Computed tomography (CT) of the abdomen and pelvis showed a non-specific colitis, splenic flexure to the rectum. CT of the brain did not show any acute abnormalities. Vitals in the emergency room (ER) included a temperature of 102.7 F, pulse of 137, respirations of 22 and pulse oximetry of 95%. Aspartate aminotransferase (AST) was 129, alanine aminotransferase (ALT) was 66, Creatinine kinase (CK) was 741, hemoglobin was 19 and platelets were 161. The patient received intravenous Vancomycin and Piperacillin/Tazobactam. Blood cultures were positive and showed Gram Positive Cocci; her urine culture was negative.  Electrocardiogram (EKG) showed normal sinus rhythm (NSR) @154 beats per minute (bpm). The patient deteriorated and had a large episode of gastrointestinal (GI) bleeding. The patient was intubated and sent to the intensive care unit for critical care observation. The patient deteriorated and expired following the family agreeing to withdraw care.

    Upon additional submission of medical documentation: the patient received intravenous dilaudid x 12 mg and intravenous Versed x 5 mg prior to expiring.

**REQUESTS/QUESTIONS:**
**Requested Services:**    Quality of Care Review

1. Was all of the medical care provided medically appropriate and conducted in accordance with the current best standard of care? Please explain in detail addressing all elements of medical decision-making, treatments provided, and timeliness. **Yes**
    This 53 year old female had been appropriately worked up for a source of infection. Chest x-ray (CXR) was negative, urine culture and urinalysis was negative. Computed tomography (CT) of the abdomen and pelvis showed to be the source of infection. The patient was appropriately initiated on intravenous fluids and intravenous antibiotics.

    Upon additional submission of medical documentation:

    There was questionable medical decision making as well as treatment that was provided to the patient. Upon further review of the additional information received, there was a quality measure that arose. The patient received Dilaudid (12 mg total) via intravenous route along with Versed 5 mg via intravenous route prior to the patient expiring. There was no documentation of the patient having pain or respiratory distress even after she was extubated. The patient received Dilaudid sequentially. At 23:01, she received Dilaudid 2 mg and 4 mg; at 23:08, she received Dilaudid 4 mg; at 23:18; she received Dilaudid 4 mg and Versed 5 mg, and at 23:25, she received Dilaudid 4 mg.

EXHIBIT D

AB-SJ.000228

Name: Johnston, Sonya

These are very large doses of pain medication as well as sedative without proper documentation. There was no documentation of either oral or nasogastric suction or post-extubation supplemental oxygen, nor documentation of oxygenation on room air. The medical care provided was not medically appropriate nor conducted in accordance with the current best standard of care.

2. Were there any complications and/or adverse outcomes? **Yes**

The sedation provided upon extubation was not appropriately documented. If there was respiratory distress with needed evidence of palliation, this should have been documented.

Since the patient had a history mental retardation, individualized approach should have been taken, reflecting the clinical situation. The patient expired and administration of such large doses of medication poses the risk of unethical behavior in regards to excessive usage and questionable euthanasia. The goal of withdrawal of care is to facilitate a more natural process without expediting it unless the patient is in respiratory agony.

3. Were the complications/adverse outcomes due to a deviation from the current best standard of care? **Yes**

The current best standard of care calls for palliation and individualized care goals while withdrawing life sustaining support. Giving palliative medication has sufficiently increased the

intended effect of hastening the patient's expiration. Opioids are the mainstay of managing a patient's dyspnea, however, this should be done with administration of minimal dosage. For example, 1 mg as needed (PRN), sublingually, or via an oral solution. Terminal agitation, if documented, is treated with intravenous (IV) lorazepam. Increased IV Dilaudid with the addition of IV Versed (midazolam) in a short period of time would hasten expiration, such as in this case.

4. Did the type, amount, and frequency of medications given within the 24 hours prior to the time of death, hasten and/or cause the patient's demise? **Yes**

Based on the chart review, the type, amount, and frequency of the medication given within 24 hours prior to time of death hastened the patient's demise

**REFERENCES:**

1. Brandt LJ, Feuerstadt P, Longstreth GF, et al. ACG clinical guideline: epidemiology, risk factors, patterns of presentation, diagnosis, and management of colon ischemia (CI). Am J Gastroenterol 2015; 110:18.

2. Strate LL, Gralnek IM. ACG Clinical Guideline: Management of Patients With Acute Lower Gastrointestinal Bleeding. Am J Gastroenterol 2016; 111:459.

3. Uptodate: Palliative sedation. Nathan Cherny, MD Jun 01, 2016.

4. Uptodate: Palliative care: The last hours and days of life. Amos Bailey, MD. May 10, 2016

This reviewer declares, under penalty of perjury, that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, this report accurately describes the information provided to me.

AMR Tracking Num: 699481

**REVIEWED BY:**

| | |
|---|---|
| **Signature:** | Electronic signature on file. |
| **\te:** | 6/22/2016 |
| **\viewer Specialty:** | Internal Medicine |
| **State:** | NY |

AB-SJ.000229

Name: Johnston, Sonya

* Board Certified Specialty is applicable to MD's and DO's and only to specialties and subspecialties that require board certifications.

AB-SJ.000230