```
            IN THE UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF ARKANSAS
                     WESTERN DIVISION



GARRY STEWART, M.D.                              PLAINTIFF



VS.                         CASE NO. 4:17-CV-00338-BSM



ADVANCED MEDICAL REVIEWS, INC.;          DEFENDANTS
EXAMWORKS, INC.; J.D. HAINES, M.D.;
GARY GRAMM, D.O.; DAVID CHEN, M.D.;
ANNA BELMAN, M.D.




_____

                     ORAL DEPOSITION

                           OF

                   JAMES HENRY JOHNSTON
_____



                      April 12, 2018

                  Pulliam & Muskheli, PLLC
                    2209 Cantrell Road
                 Little Rock, Arkansas 72202




Shyloa Myers, RPR, CCR

Arkansas Lic. No. 710
```

EXHIBIT E

Page 2

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

MICHAEL MUSKHELI
Pulliam & Muskheli, PLLC
2209 Cantrell Road
Little Rock, AR  72202

E-mail: michael@pulliam-muskheli.com

ON BEHALF OF THE DEFENDANTS:

JESSICA PRUITT KOEHLER
Wright, Lindsey & Jennings, LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR  72201-3699

E-mail: jkoehler@wlj.com

ALSO PRESENT:

GARY STEWART

Page 3

I N D E X

STYLE AND NUMBER . . . . . . . . . . . . . . . . . . . 1

APPEARANCES . . . . . . . . . . . . . . . . . . . . . 2

CAPTION/STIPULATIONS . . . . . . . . . . . . . . . . . 4

WITNESS:    JAMES HENRY JOHNSTON

    Examination by MS. KOEHLER. . . . . . . 5

    Deposition concluded . . . . . . . . . . . . . . . 34

CHANGES AND SIGNATURE PAGE. . . . . . . . . . . . . . 35

COURT REPORTER'S CERTIFICATE. . . . . . . . . . . . . 36

E X H I B I T S

DESCRIPTION                                                MARKED

NO EXHIBITS

C A P T I O N

ANSWERS AND ORAL DEPOSITION OF JAMES HENRY JOHNSTON, a witness produced at the request of the Defendants, taken in the above-styled and numbered cause on the 12th of April, 2018 before Shyloa Myers, CCR, RPR, and Notary Public, at 10:30 a.m. at the offices of Pulliam & Muskheli, 2209 Cantrell Road, Little Rock, Arkansas 72202.

S T I P U L A T I O N S

NO STIPULATIONS ON THE RECORD

1      (Deposition commences at 10:50 a.m.)
2                    PROCEEDINGS
3                JAMES HENRY JOHNSTON,
4      Called as a witness, having been first duly sworn
5  to tell the truth, the whole truth, and nothing but the
6  truth, was examined and testified as follows:
7                    EXAMINATION
8  BY MS. KOEHLER:
9  Q.   Mr. Johnston, we met earlier; but, again, my name is
10 Jessica Koehler.  I represent the defendants in this
11 lawsuit.  And those defendants are a company called Advanced
12 Medical Reviews, Inc; ExamWorks, Inc.; and then some
13 physician defendants.  And we'll go over their names later.
14     But first could you state your full name for the
15 record, please.
16 A.   My full legal name is James Henry Johnston.
17 Q.   Okay.
18 A.   Everything legal though, most -- even on my IRS is just
19 Jim.
20 Q.   Jim.
21 A.   Jim Johnston.
22 Q.   Okay.  And I want you to know that I take no pleasure
23 in having to take your deposition today; but the reason I've
24 noticed your deposition is because the plaintiff in this
25 lawsuit, who's Dr. Garry Stewart, has identified you as a

Page 19

1   A.   No.

2   Q.   Or his lawyer?

3   A.   No.  It would be -- well, ask that question again,
4   please.

5   Q.   Did either Mr. Muskheli or Dr. Stewart tell you
6   anything about this lawsuit?

7   A.   None other than I think what I had said earlier; that,
8   you know, they were trying to get his license.

9   Q.   What was the purpose of your meeting with them?

10  A.   I guess they wanted to know what -- what I knew or what
11  I felt or what I thought, I assume.

12  Q.   And what did you tell them?

13  A.   I don't believe Dr. Stewart -- well, let me put it this
14  way for me and my children, my other five -- four children.
15  We stood around her, the bed she was in.  She was
16  unconscious.  She --

17  Q.   And "her" is your daughter, ▮▮▮▮; right?

18  A.   ▮▮▮▮.

19  Q.   Okay.

20  A.   She knew nothing that was going on.  And Dr. Stewart
21  had come out and talked to us and gave us the option of
22  leaving her on life support or taking her off.  And my
23  recollection, recollection is that he told us that she might
24  live five minutes or she might live 30.

25       Well, in a conversation with my children, we decided

James Henry Johnston 4/12/2018                           Garry Stewart, M.D. v. Advanced Medical Reviews, Inc.; et al

Page 20

1   the best thing to do was to go ahead and take her off of
2   life support.  We -- we gave Dr. Stewart that answer, to
3   take her off life support.  And he did and she was gone in
4   five minutes.
5   Q.   And was it you that made that decision?  Were you the
6   Power of Attorney?
7   A.   I was.  Yes, I would have been the Power of Attorney.
8   I'm the one that told him.  But we all made it as -- her
9   brothers and sisters and myself made it as a group.
10  Q.   Right.
11  A.   It was a hundred percent.  Everybody agreed.
12  Q.   So at the meeting you had with Mr. Muskheli and Dr.
13  Stewart, you told them the story you just told me?
14  A.   Yes.
15  Q.   Did you tell them anything else?
16  A.   I may have said -- I may have told them a little bit
17  about my association with ▬▬▬▬ over all the years.  I
18  probably did tell them that.  And I don't know if that will
19  come out in court or not, but I will be glad to tell you if
20  you want to know.
21  Q.   Sure.  You go ahead.  You tell me whatever you want to
22  tell me.
23  A.   Well, we -- she was at -- she was 55 when she passed
24  away.  She was admitted into the CHDC -- which we used to
25  always call the "Children's Colony" -- when she was six

1  A.  Well, just I had known him for several years and that
2  he'd been the doctor at the Colony and I had no problem.
3  Q.  Did you know him outside of the capacity that he was
4  your daughter's doctor?
5  A.  No.
6  Q.  Okay.  And you said a couple years.
7      So did you start knowing him when he was treating her
8  at the Colony?
9  A.  Yes.
10 Q.  Okay.  Do you have any sort of medical background?
11 A.  Do I --
12 Q.  Do you --
13 A.  Something was wrong with me?
14 Q.  No, no.  In the medical field?
15 A.  Oh, no.  No, not at all.
16 Q.  So you've never had a job in the medical field in any
17 capacity; is that right?
18 A.  I have not.
19 Q.  Do you have any sort of financial background?  Have you
20 ever worked in finance?
21 A.  No.
22 Q.  Okay.  Do you intend to give any sort of expert opinion
23 in this lawsuit?
24 A.  I don't know what "expert" is.
25 Q.  Do you intend to give an opinion as though you were an

1  expert in either the medical field or an expert in the
2  financial field in this lawsuit?
3  A.   No.
4  Q.   Do you know anything about my clients, Advanced Medical
5  Review, Inc. or its parent company, ExamWorks, Inc.?
6  A.   No, no.
7  Q.   Do you know what the companies do?
8  A.   No.
9  Q.   Do you know who the specific -- well, I guess I should
10 explain to you a little bit about what my companies do
11 before my next question.
12       So our company basically has peer reviewers who are
13 physicians.  And if we are contacted and asked to conduct an
14 external review of a certain physician's cases, we have
15 other physicians around the country who will review those
16 cases.
17       Does that make sense?
18 A.   Yes.
19 Q.   Okay.  Do you know who the specific physician was that
20 peer reviewed your daughter's case with Dr. Stewart?
21 A.   No.
22 Q.   I want to go through the physician defendants in this
23 lawsuit by name just to see if you've ever heard of them, if
24 you know them, if you've heard anything about them.
25       Dr. J.D. Haines.  That's H-A-I-N-E-S.

1  today.
2      And you understand that you would be a witness for
3  Dr. Stewart in a lawsuit that he has filed against my
4  clients?
5  A.  Yes, I understand that.
6  Q.  Were you present at your daughter's bedside when she
7  passed away?
8  A.  Yes.
9  Q.  You told me that earlier.
10     Are you going to testify about any of the medical care
11 that was taking place around the time of your daughter's
12 death?
13 A.  Well, from a medical standpoint, I don't know what it
14 was.  But I know that -- I know that she was given
15 medications, and I know that she was hooked up to the -- you
16 know, life support and that sort of thing.  But that's
17 really all I know.
18 Q.  And how do you know that?  Was that just your personal
19 observation?  You knew she was hooked up to --
20 A.  Yeah, observation.  I saw it.
21 Q.  Do you know any specifics about what those medications
22 were?
23 A.  No.
24 Q.  Do you know who was administering those medications?
25 A.  Not by name.  Nurses.

1  Q. Do you know what doctor was ordering or doctors were
2  ordering those medications?
3  A. I assume Dr. Stewart did. I don't know that, but I
4  assume he did.
5  Q. Did you keep any records of what was going on at the
6  hospital during that time?
7  A. No.
8  Q. You didn't jot anything on a napkin or a piece of paper
9  or anything like that?
10 A. No.
11 Q. And, again, you're not commenting on -- you're not
12 testifying to any of the medical treatment given to your
13 daughter by Dr. Stewart or any other physician at Conway
14 Regional; right?
15 A. No.
16 Q. And you stated earlier that you have not seen your
17 daughter's medical chart from Conway Regional Medical
18 Center; is that correct?
19 A. I have not.
20 Q. So you can't state whether the information in her
21 medical chart is correct or incorrect?
22 A. I would not know.
23 Q. Okay. So you stated earlier you're not familiar with
24 the allegations that Dr. Stewart has made in this lawsuit
25 that he has filed, right?

1  A.  Right.
2  Q.  Do you know if Dr. Stewart still possesses a medical
3  license?
4  A.  I do not know.
5  Q.  Do you have a thought on that?
6  A.  I assume he does.
7  Q.  Do you know if Dr. Stewart can admit patients to any
8  hospital in the state?
9  A.  I assume he can.
10 Q.  Do you know how much money Dr. Stewart was making in
11 2014?
12 A.  No.
13 Q.  Do you know how much money he was making in 2015?
14 A.  No.
15 Q.  2016?
16 A.  No.
17 Q.  How about present day?
18 A.  No.
19 Q.  Do you know how much money he's making?
20 A.  No.
21 Q.  Do you know anything about the relative success of
22 Dr. Stewart's medical practice?
23 A.  I've not heard of anything negative.
24 Q.  Okay.  And that's you haven't heard anything negative
25 about his medical practice?

```
 1   A.   Right.
 2   Q.   Do you have any knowledge about how many patients
 3   Dr. Stewart typically sees on a yearly basis?
 4   A.   Oh, boy.  There's 400 or so in the Colony I think, so
 5   I -- I don't know.  I don't know what the number would be.
 6   Q.   What about a monthly basis?
 7   A.   I -- no, I don't know.
 8   Q.   Daily basis?
 9   A.   Don't know.
10   Q.   You don't know how many patients he admits to hospitals
11   in the state, right?
12   A.   No, I do not.
13   Q.   Have you ever heard anyone talk about Dr. Stewart in a
14   negative way?
15   A.   No.
16   Q.   None?  Nobody whatsoever?
17   A.   No.
18   Q.   No one's ever made a negative comment about Dr. Stewart
19   as a person to you?
20   A.   Not to me.
21   Q.   Did you hear anyone in the community express an opinion
22   about what happened to your daughter at the hospital?
23   A.   No.
24   Q.   Have you ever heard anyone say that Dr. Stewart killed
25   your daughter?
```

James Henry Johnston 4/12/2018                       Garry Stewart, M.D. v. Advanced Medical Reviews, Inc.; et al

Page 33

1  A.   He told me that.  He told me that your company or the
2  doctors said that.  That's all I've ever heard.
3  Q.   Have you ever heard that from anyone besides
4  Dr. Stewart or his lawyer?
5  A.   No.
6  Q.   No one in the community has represented that to you?
7  A.   No.
8  Q.   Have you ever heard anyone say that Dr. Stewart
9  euthanized your daughter?
10 A.   No.
11 Q.   Is it fair to say that you have no knowledge about how
12 Dr. Stewart's business may or may not have been impacted by
13 any review done by my clients?
14 A.   I don't know.
15 Q.   Is it also fair to say that based on your testimony
16 earlier, that you know nothing about Dr. Stewart's finances?
17 A.   I know nothing.
18 Q.   And you know nothing about the success of his medical
19 practice, correct?
20 A.   I do not.
21          MS. KOEHLER:  Okay.  That's all I have for now.
22       You might get some questions from Mr. Muskheli, and
23       then I might have some follow-ups after that.
24          MR. MUSKHELI:  I have no questions for this
25       witness.

Shyloa Myers
Bushman Court Reporting                                    501-372-5115

James Henry Johnston 4/12/2018                           Garry Stewart, M.D. v. Advanced Medical Reviews, Inc.; et al

Page 34

1              (Discussion off the record.)
2              MR. MUSKHELI:   He would like to reserve his right
3        to read and sign.
4              (Deposition concluded at 11:18 a.m.)

Page 35

CHANGES AND SIGNATURE

WITNESS:  JAMES HENRY JOHNSTON
DATE TAKEN:  April 12, 2018

PAGE/LINE      CORRECTION AND REASON FOR CORRECTION

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Witness Signature:_____      Date:_____

_____

My Commission Expires_____       (Notary Seal)

Page 36

CERTIFICATE

STATE OF ARKANSAS    )
                          )ss
COUNTY OF SALINE     )

    I, Shyloa Myers, CCR, RPR, and Notary Public, do hereby certify that the foregoing testimony of the witness, JAMES HENRY JOHNSTON, was reported verbatim through the use of the stenographic method and thereafter transcribed by me or under my direct supervision to the best of my ability, taken at the time and place set out on the caption hereto.

    I FURTHER CERTIFY that in accordance with Rule 30(e) of the Rules of Civil Procedure, review of the transcript was requested.

    I FURTHER CERTIFY that I am not a relative or employee of any attorney or employed by the parties hereto, nor financially interested or otherwise in the outcome of this action, and that I have no contract with the parties, attorneys, or persons with an interest in the action that affects impartiality or that requires me to provide any service not made available to all parties to the action.

    WITNESS MY HAND AND SEAL this 26th day of April, 2018.

_____
Shyloa Myers, RPR, Notary Public        (SEAL)
Arkansas CCR Lic. No. 710