IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

GARRY STEWART, M.D.                                                                          PLAINTIFF

v.                                    CASE NO. 4:17-CV-00338-BSM

ADVANCED MEDICAL REVIEWS, INC.; J.D.
HAINES, M.D.; GARY GRAMM, D.O.; DAVID
CHEN, M.D.; ANNA BELMAN, M.D.; and
JENNIFER CROWLEY, R.N.                                                                   DEFENDANTS

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION IN LIMINE
REGARDING SELECT ARKANSAS STATUTES**

I.  Introduction

At the trial of this case, defendants anticipate that plaintiff, through his counsel and witnesses, will attempt to elicit testimony about the meaning, interpretation, or relevance of various Arkansas statutes, including the Arkansas Peer Review Fairness Act and the Arkansas Chronic Intractable Pain Act. Such an action would invade the province of the Court, which is to determine what law applies and the meaning of said law. Therefore, plaintiff should be precluded from referencing these and other statutes and regulations at the trial of this case.

II.  Argument

It is axiomatic that statutory application and interpretation are issues of law that are left for the Court to determine. *First Arkansas Bank & Trust v. Gill Elrod Ragon Owen & Sherman, P.A.*, 2013 Ark. 159, at 5, 427 S.W.3d 47, 51 (Ark. 2013) ("The correct application and interpretation of an Arkansas statute is a question of law. . . ."). Arkansas law applies to this diversity action. *Hallstrom v. Ammerman*,

1862116-v1

111 F.3d 872, 874 (8th Cir. 1997). But the same principle holds true under federal law. *Daley v. Mattiott Intern., Inc.*, 415 F.3d 889, 894 (8th Cir. 2005) (holding that statutory interpretation is a question of federal law). Thus, the existence of legal matters, such as the meaning and interpretation of statutes and regulations are not subjects on which witnesses should testify. *So. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838 (8th Cir.2003); *Hogan v. Am. Telephone & Telegraph Co.*, 812 F.2d 409,411 (8th Cir.1987)). Witnesses, lay or expert, may only offer opinion testimony to the extent it would be helpful to the factfinder. *See* Fed. R. Evid. 701, 702. "Opinion testimony is not helpful to the factfinder if it is couched as a legal conclusion." *Hogan v. American Tel. & Tel. Co.*, 812 F.2d 409, 411 (8th Cir. 1987) (citing *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)). "Because the judge and **not a witness** is to instruct the factfinder on the applicable principles of law, . . . exclusion of opinion testimony is appropriate. . . ." *Id.* (citing *Torres*, 758 F.2d at 151, and *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509–10 (2d Cir. 1977)) (emphasis added) (internal citation omitted).

Applying these principles, Arkansas federal district courts have excluded witnesses from offering testimony as to the application and interpretation of statutes. In *McLane v. Rich Transport, Inc.*, Judge Kristine Baker precluded a witness from offering a series of opinions regarding the meaning and application of Federal Motor Carrier Safety Regulations. No. 2:11-CV-00101-KGB, 2012 WL 3996832, at *1–3 (E.D. Ark. Sept. 7, 2012). The basis of Judge Baker's ruling was

acknowledgment of the longstanding principle identified above—that is, the testimony of witnesses should not invade the province of the Court. *See id.*

Questions posed by plaintiff's counsel to expert or lay witnesses regarding the meaning or application of the Arkansas Peer Review Fairness Act, Arkansas Chronic Intractable Pain Act, or regulations of the Arkansas Medical Board would suffer from the same defects as the proffered opinions of the witness in *McLane*. For example, during the deposition of Dr. Eric Bravo, defendants' internal medicine expert, plaintiff questioned Dr. Bravo about the application of the Chronic Intractable Pain Act:

> Q. I'm handing you what I've marked as Plaintiff's Exhibit 13. I will represent to you that this is a copy of the Arkansas Chronic Intractable Pain Treatment Act codified in Arkansas Code Annotated 17-95-701 and following.
>
>     Are you familiar with this statute?
>
> A. I think it was provided in one of the -- I think on a CD-ROM, and I think I looked at it briefly, but otherwise not really.
>
> Q. If you would, go -- go five pages in.
>
> A. Okay.
>
> Q. And this is the page I'd like for you to get to.
>
> A. This one?
>
> Q. Yes. Yep.
>
>     And toward the bottom of that page, do you see subsection (d) that starts with based upon evaluation and management of a patient's individual needs, a physician may? Then number one says, treat a patient who develops chronic intractable pain with a dangerous or controlled drug to relieve the patient's pain; two, continue to treat the patient for as long as the pain persists; three, treat the pain by managing it with dangerous or controlled drugs in amounts or combinations that may not be appropriate for treating another medical

condition; four, administer large doses of dangerous or controlled drugs for pain management if the benefit of relief outweighs the risk of the large dose; and five, administer a large dose of a dangerous or controlled drug even if its use may increase the risk of death if the the purpose is not to cause or assist in the patient's death.

    Did I read that correctly?

A.   Yes.

Q.   Did you consider this statute when formulating your opinions in this case?

A.   No, because this is a statute that refers to treating, and I'll quote it, chronic intractable pain, and I've seen patients with chronic intractable pain, and these seven patients did not have chronic intractable pain. So this statute really doesn't apply.

Q.   So let me give you a specific example. When [REDACTED] was removed from the ventilator, did -- let me try to -- how to phrase this better.

    Do you contend that none of these patients experienced pain post extubation?

        MR. JUNG:  Object to form.

BY MR. MUSKHELI (CONT.):

Q.   And I'm talking about the seven patients that you reviewed.

        MR. JUNG:  Object to form, misstates testimony.

        DR. BRAVO:  Yeah, I think based on the records, some did have signs of pain or distress, some did not, and what I would say is most of them were -- if not all of them were -- were unconscious, and so there were no -- and certainly none of them had chronic intractable pain.

BY MR. MUSKHELI (CONT.):

Q.   Let's talk about chronic first. What's the basis of you saying that they didn't have chronic pain?

A.   So typically when we see patients in the hospital who have chronic pain, they'll describe a couple of things. One is they'll have pain for weeks to months and that they've been on pain pills prescribed to them by physicians, a lot of times by pain physicians, for weeks to months,

and these are people that take chronic -- or take pain medication on a daily basis every day, and like I said, most of them are -- are seeing pain specialists.

Q.   So is it the duration?

A.   It's the duration for chronic.  It's also that they're taking pain medicine daily.  Those are the -- those are the two main ways to diagnose people with chronic pain.

From a physician standpoint, there are a lot of medications that we see that people take, for example, Methadone or Oxycontin or Fentanyl patches.  Those by the nature of those medications would automatically tell you they have chronic pain.  You wouldn't use those medications for acute pain.

Q.   And let me ask you about the intractable part.  You don't believe that these patients experienced intractable pain?

MR. JUNG:   Which patients?

BY MR. MUSKHELI (CONT.):

Q.   The seven that you reviewed.

A.   No.  I mean, again, based on what I read in the records, the notes, the GCS scores, there was no evidence for severe or intractable pain.

Q.   And based on your experience of performing multiple extubations, is it reasonable for you to assume that these seven patients did not experience intractable pain following extubation?

A.   Yes.  I think it's very reasonable to assume that if you just give these patients an average dose of benzodiazepine and an average dose of narcotic or opiate before the extubation, then you can manage them just like every other terminal extubation, and they don't necessarily have intractable pain.

Q.   Any other reason why you don't believe this statutory section is relevant to the standard of care in this case?

A.   Mainly because I read it -- the way I read it says that it's -- it regards patients who have chronic intractable pain, and, again, those are the patients that have had pain for at least a month who take clearly medication and, again, a lot of times are seeing pain specialists.

*See* Ex. A, pp. 104:11 – 108:17. Even though Dr. Bravo makes it clear that the Arkansas Chronic Intractable Pain Act is inapplicable in this case, that determination is one that should not be made by any question by counsel or answer by a witness. It is solely for the Court to decide. Thus, plaintiff should be precluded from referencing any statute or regulation at the trial of this case.

### III.   Conclusion

Issues of law are to be decided by the Court. The application and interpretation of a statute is an issue of law. Therefore, plaintiff should be precluded from invading the province of the Court by eliciting any testimony about the application of the Arkansas Peer Review Fairness Act, the Arkansas Chronic Intractable Pain Act, Arkansas Medical Board Rules and Regulations, or any other statute during the trial of this case.

        WRIGHT, LINDSEY & JENNINGS LLP
        200 West Capitol Avenue, Suite 2300
        Little Rock, Arkansas 72201-3699
        (501) 371-0808
        FAX: (501) 376-9442
        E-MAIL: elowther@wlj.com; djung@wlj.com

        By   David C. Jung
           Edwin L. Lowther, Jr. (81107)
           David C. Jung (2013141)
           Jessica Pruitt Koehler (2015226)
           *Attorneys for defendants*

1862116-v1